# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

In the Matter of the Search of:

The Use of a Cell-Site Simulator to Locate the cellular
device associated with the Cellular Device Assigned
Call Number [(262) 283-2100]

)
)
)
)
)
)

Case No.  __23-872M(NJ_____

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property over which the Court has jurisdiction pursuant to Title 18, United States Code, Sections 2703 and 2711:

   See Attachment A-2

I find that the affidavit(s) or any recorded testimony, establish probable cause to search and seize the person or property described above and that such search will reveal:

  See Attachment B

**YOU ARE COMMANDED** to execute this warrant ON OR BEFORE 4/20/2023_____ (*not to exceed 14 days*)
☐ in the daytime between 6:00 a.m. and 10:00 p.m.     xx☐  at any time in the day or night because good cause has been
   established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _Honorable Nancy Joseph_____.
                                                                    *(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C.
§ 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
     ☐for _____ days (not to exceed 30)       ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:  __4/6/2023 @3:45 p.m._____

_____
*Judge's signature*

City and State: Milwaukee, Wisconsin                    Honorable Nancy Joseph                U.S. Magistrate Judge
                                                         *Printed Name and Title*

| **Return** | | |
|---|---|---|
| Case No: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of:

Inventory of the property taken and/or name of any person(s) seized:

| **Certification** |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the undersigned judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

Subscribed, sworn to, and returned before me this date:

Date: _____

_____
*United States Magistrate Judge*

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Wisconsin

In the Matter of the Search of: )
)
The Use of a Cell-Site Simulator to Locate the cellular )
device associated with the Cellular Device Assigned )       Case No. __23-872M(NJ)_____
Call Number [(262) 283-2100] )
)
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

See Attachment A-2

over which the Court has jurisdiction pursuant to Title 18, United States Code, Sections 2703 and 2711, there is now concealed:

See Attachment B

The basis for the search under Fed. R. Crim P. 41(c) is:
- ☒ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of:

18 U.S.C. 1951(a) – Hobbs Act Robbery
18 U.S.C. 924(c) – Brandishing of a firearm during a crime of violence
18 U.S.C. 371 - Conspiracy

The application is based on these facts: See attached affidavit.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days:_____) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Heather Wright, Special Agent, FBI
*Printed Name and Title*

Sworn to before me and signed via telephone:

Date: _____

__4/6/2023_____        _____

City and State: Milwaukee, Wisconsin

_____
*Judge's signature*

Honorable Nancy Joseph_____, U.S. Magistrate Judge
*Printed Name and Title*

## ATTACHMENT A-2

This warrant authorizes the use of the electronic investigative technique described in Attachment B to identify the location of the cellular device assigned phone number 262-283-2100, whose wireless provider is Verizon Wireless.

This Warrant also serves as a Pen Register order under 18 U.S.C. § 3123. The Court makes the following findings: ABDI A. ABDI is the person to whom the pen register or trap and trace device is to be attached/applied and who is the subject of the criminal investigation; 262-283-2100 is the phone number to which the device is to be attached; and Title 18 U.S.C. § 1951(a), Hobbs Act Robbery, § 924(c), Brandishing of a Firearm during a Crime of Violence, and § 371 (conspiracy) are the offenses, to which information relates; and

The attorney for the government has certified to this Court that the information likely to be obtained by the installation and use of the pen register or trap and trace device is relevant to an ongoing criminal investigation by the Federal Bureau of Investigation.

**ATTACHMENT B**

**Particular Things to Be Seized**
**with a Cell Site Simulator or Wi-Fi Geolocation Device**

This Warrant authorizes the officers to whom it is directed to determine the location of the target cellular device by collecting and examining:

1. radio signals emitted by the target cellular device for the purpose of communicating with cellular infrastructure, including towers that route and connect individual communications; and

2. radio signals emitted by the target cellular device in response to signals sent to it by the officers;

for a period of thirty (30) days, during all times of day and night. This includes monitoring non-content signaling and routing information, including all non-content packet switched data, through the installation and use of a pen register and trap and trace device pursuant to 18 U.S.C. § 3123 by the Federal Bureau of Investigation. Because the use of the device, a Cell Site Simulator or Wi-Fi geolocation device, may fall within the definitions of a "pen register" or a "trap and trace device," see 18 U.S.C. § 3127(3) & (4), the application and the warrant are designed to comply with the Pen Register Statute as well as Rule 41. The application therefore includes all information required for and serves as a pen register application, 18 U.S.C. § 3123(a); similarly, the warrant therefore includes all the information required for and serves as a pen register order, 18 U.S.C. § 3123(b).

This warrant does not authorize the interception of any content (telephone, text message, or internet based). The investigative device may interrupt cellular service of phones or other cellular devices within its immediate vicinity. Any service disruption to non-target devices will be brief and temporary, and all operations will attempt to limit the interference with such devices.

1

In order to connect with the Target Cellular Devices, the device may briefly exchange signals with all phones or other cellular devices in its vicinity. These signals may include cell phone identifiers. The device will not complete a connection with cellular devices determined not to be any of the Target Cellular Devices, and law enforcement will limit collection of information from devices other than the Target Cellular Devices. To the extent that any information from a cellular device other than the Target Cellular Devices is collected by the law enforcement device, law enforcement will delete that information, and law enforcement will make no investigative use of it absent further order of the court, other than distinguishing the Target Cellular Devices from all other cellular devices.

Under this warrant, the cell site simulator / geolocation device shall be transferable to any changed dialed number subsequently assigned to a device bearing the same ESN, IMSI, or SIM as the Target Cellular Devices; any changed ESN, IMSI, or SIM subsequently assigned the same dialed number as the Target Cellular Devices; or any additional changed dialed number, ESN, IMSI, or SIM listed to the same subscriber account as the Target Cellular Devices.

The Court finds reasonable necessity for use of the techniques and collection of information described. *See* 18 U.S.C. § 3103a(b)(2).

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the information described. *See* 18 U.S.C. § 3103a(b)(2).

2

I, Heather Wright, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c) to authorize law enforcement to employ electronic investigative techniques, as described in the following attachment, to determine the location of the target cellular devices assigned dialed number **414-588-5392 (Target Device 1)** associated with the service provider US Cellular or **262-283-2100 (Target Device 2)** associated to service provider Verizon referred to in this affidavit as the "Target Cellular Devices." This affidavit is made in support of up to two different search warrants to locate the phone: 1) by obtaining information from the service provider, e.g., cell site and other precision location information and/or 2) by utilizing a device that acts as a cell phone tower sometimes referred to as a Cell Site Simulator or Wi-Fi geolocation device. In addition, because this request may be construed as a Pen Register / Trap and Trace device or request, the application for this warrant (which includes this affidavit) is intended to comply with 18 U.S.C. § 3122.

2.      I am a Special Agent with the Federal Bureau of Investigation and have experience in the investigation, apprehension and prosecution of individuals involved in federal criminal offenses, the use of cellular devices to commit those offenses and the available technology that can be used by law enforcement to assist in identifying the users of cellular devices and their location.

3.      The facts in this affidavit come from my personal observations, training, experience, and information obtained from other agents and witnesses. This affidavit is intended

to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.     There is reason to believe the target cellular device is currently located in this district. The user of **Target Device 1**, identified as DARRION ALLISON, and the user of **Target Device 2**, ABDI A. ABDI, are known to spend most of his time in the Eastern District of Wisconsin. ABDI and ALLISON have been observed via surveillance in the Milwaukee area as well as traffic stopped by Milwaukee Police Department on March 24, 2023 near 2519 N. Buffum Street in the City of Milwaukee.

5.     Based on the facts set forth in this affidavit, there is probable cause to believe that ABDI A. ABDI and DARRION M. ALLISON are using the Target Cellular Devices. I know from training and experience that cell phone users normally have their cellular telephones with them, so locating a user's cell phone will show that user's location. I believe that locating the Target Cellular Devices will constitute and lead to evidence of federal offenses, Title 18 U.S.C. § 1951(a), Hobbs Act Robbery, § 924(c), Brandishing of a Firearm during a Crime of Violence, and § 371 (conspiracy) committed by ABDI A. ABDI and DARRION M. ALLISON. Accordingly, ABDI A. ABDI and DARRION M. ALLISON are "persons to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).]

## PROBABLE CAUSE

6.     On October 25, 2022, the Milwaukee Police Department responded to an armed robbery complaint at 2650 N. Martin Luther King Drive, Milwaukee, Wisconsin. Upon arrival, officers spoke with the victim, identified as a United States Postal mail carrier, hereinafter referred to as D.D. D.D. stated that he had been conducting his route at approximately 2:30 P.M., and was about to start at 2500 N. Richards Street, when he was approached by four young males. D.D.

2

described Subject #1 as possibly a Hispanic male, approximately 19 years old. D.D. stated that Subject #1 and three other males, approached him from behind and demanded that he "give up his shit." D.D. stated that he heard one of the subjects say that they had a gun to his back. D.D. stated that he told the subjects that he was not going to give them anything and quickly turned around to face the attackers, fearing that one of them may have a gun. D.D. stated that he did not observe any of the subjects with a firearm and immediately took a fighting stance. Three of the subjects ran away, while Subject #1 stayed and took a fighting stance as well. D.D stated that as Subject #1 attempted to punch D.D., D.D. attempted to punch Subject #1. D.D. stated that he was unsure if his punch made contact with Subject #1, however, Subject #1 staggered back and ran away. D.D. stated that Subject #1 ran eastbound and eventually northbound towards the alley. D.D. stated that he chased after Subject #1, however, he lost sight of Subject #1 and returned to his vehicle. D.D. stated that when he returned to his vehicle, he was unable to find his USPS issued Arrow key that had been hanging around his neck on a lanyard.

7.     On January 28, 2023, a photo array was presented to D.D. with the target of the photo array as JESSIE L. COOK (dob: 12/22/2003). D.D. identified COOK as the individual that had demanded his things and attacked D.D. on October 25, 2022.

8.     On December 7, 2022, the Milwaukee Police Department responded to 3205 N. Breman Street, Milwaukee, Wisconsin, for an armed robbery of a United States postal mail carrier, hereinafter referred to as E.V.  E.V. stated that at approximately 3:00 p.m., he had just finished delivering mail to 3219 N. Breman Avenue and was walking south towards the next block when he passed two subjects who were walking northbound on the west sidewalk.  E.V. stated that after they had passed, he could hear running footsteps approaching him from behind and he turned

3

around. The same two subjects that had just passed him ran up to him and one had a gun pointed at him.

9. E.V. stated that Suspect #1 said "Gimme everything..gimme everything…gimme everything," while pointing a small framed semi-automatic hand gun at him. E.V. stated that he provided his ID and keys that were on a lanyard around his neck as well as the mail in his hands. E.V. stated that the key fob for the postal van as well as his Arrow key were on the key ring that was provided. The Arrow key was specifically assigned to E.V. that day and can open the blue mail boxes and some boxes at apartment buildings. E.V. stated that the serial number for the key provided was #30411. E.V. stated that Subject #2 took the ID with the keys attached but dropped the mail E.V. had handed to him. E.V. stated that he attempted to hand the Subjects his mail bag because it had scanned devices within the bag that could be GPS located, however, the subjects were not interested and were only interested in the lanyard and keys. E.V stated that he then ran to a corner bar for safety and called the police. E.V stated that the subjects ran southbound and heard a car squeal off in a hurry.

10. Shortly after the incident, a witness approached him and told him that he saw the suspects get into a white Nissan Murano. That particular witness could not stay on scene. However, an additional witness also came forward and stated that they had observed the robbery and corroborated that she, too, had observed the suspects enter a white Nissan Murano.

11. A canvas for video surveillance was completed and video surveillance from a Ring doorbell was obtained at 3219 N. Breman Street. After a review of the video, Subject #1 was observed to be a black, male, late teens, approximately 5'10" tall, thin build, dark complexion, wearing a black hoody, black mask (above eyes showing), light gray pants, black shoes, armed with a black semi-automatic handgun. Suspect #2 was observed to be a black, male, late teens,

4

approximately 6'0" tall, thin build, medium complexion, wearing a black hoody, black mask (above eyes showing), black pants, white shoes, unknown if armed.

12.     On January 25, 2023, a state residential search warrant related to a drug investigation was executed at 2519 N. Buffum Street, Milwaukee, Wisconsin. Prior to the execution, two black males, and two black females were observed leaving the residence in a blue Toyota Camry. Shortly thereafter and just prior to the warrant execution, the blue Toyota returned with two of the four individuals inside. When officers approached the vehicle, they identified the individuals as MARVIN TURNER (dob: XX/XX/2000) and HUSSEIN A. HAJI (dob: XX/XX/2001. Officers then executed the search warrant and identified HURIA H. ABU (dob: XX/XX/2002), JESSIE L. COOK (dob: XX/XX/2001), AMAURIE D. SMITH (dob: XX/XX/2005) as well as two females who were not residents of the house, hereinafter "S. J". and "S. W.". A search of the residence resulted in the recovery of a Glock 19 handgun (stolen out of Cudahy), a loaded Ruger P95 handgun, a loaded Ruger PC Charger carbine pistol, a loaded AK 7.62 cal pistol, which matched the description of the firearm used in the December 7, 2022 robbery, a GSG rifle upper with mock silencer, hundreds of pieces (approximately 900 checks) of stolen mail including personal and commercial checks from Milwaukee, Shorewood, Brookfield, Brown Deer, as well as others, checks currently being "washed" in acetone, keys on a bed located in a bedroom that unlocked a safe which contained $7000, a set of USPS keys, and 19 cellular phones. Both Arrow keys stolen in the October 25, 2022 and December 7, 2022 robberies were recovered. Officers also located keys for a Nissan Murano that unlocked a white Nissan Murano parked outside the residence and matched the vehicle description used in the October 25, 2022 and December 7, 2022 robberies.

5

13.     Following the arrests of HAJI, COOK, ABU, SMITH and TURNER, interviews were conducted. During the interview of COOK, COOK stated to detectives that he was the primary user of the Nissan Murano located at the residence during the execution of the search warrant. COOK admitted to being involved in the robbery of the postal carrier on October 25, 2022. COOK stated that COOK was the individual that punched the postal carrier during the robbery, however, COOK would not state why the mail carrier was targeted or who he was with during the robbery. COOK stated to detectives that he was the owner of a Samsung Galaxy 20 black cellular phone with telephone number 262-389-0018.

14.     During the interview of HAJI, HAJI stated to detectives that he was the owner of a purple Apple iPhone 14 and a yellow Apple iPhone XR with the telephone number 262-364-4059. HAJI stated that his service provider is T-Mobile and that he has had that cellular number for a couple of months. During the interview, HAJI admitted to detectives that he had participated in the robbery of the mail carrier that had occurred on December 7, 2022. HAJI stated that ABU was the driver and that COOK had the gun and pointed it at the mail carrier. HAJI stated that they used the Nissan Murano and that HAJI was the individual that took the Arrow key from the mail carrier. HAJI also admitted to detectives that they were after the specific Arrow key that mail carriers carry during the robbery. HAJI stated that HAJI, COOK, and ABU participate in "mail runs", which are when a person removes mail from mailboxes. HAJI stated that he has participated in approximately 40 mail runs in at least four different vehicles. HAJI stated that the target of the mail runs are personal checks and that they sell them after they are located. HAJI stated that one of the methods of payment when selling the checks is CashApp.

15.     During the interview of S. J., S.J. stated that she had only been to the house on Buffum twice and that she had seen guns in the house. S.J. stated that she had seen approximately

6

four guns. S.J. stated that she heard SMITH and others talking about a robbery and that S.J. believed they were talking about the robbery of a mailman. S.J. raised her hands up simulating holding a gun and stated that he said "nigga up" or something like that.

16.     During the interview of S.W., S.W. stated that ABU, COOK and HAJI do "mail runs" in the morning. S.W. sated that she believed that they get checks out of the mail using the Arrow key obtained from the mail person. S.W. did not know who robbed the mail person to get the key but she believed that ABU, COOK, and HAJI were the ones that did the robbery because they were the ones who do the mail runs. S.W. stated that ABU, COOK, and HAJI take pictures of the checks but she was unsure if it was before or after they put the checks in acetone. S.W. stated that SMITH had been involved with ABU, COOK and HAJI lately and had been riding in vehicles and doing the "check stuff" with them. S.W. stated that SMITH had been staying on the couch at the house.

17.     On February 10, 2023, the Milwaukee Police Department responded to an armed robbery that had occurred near 5273 N. 27th Street, Milwaukee, at approximately 11:40 A.M. The victim was identified as a United States Postal carrier, hereinafter referred to as N.M. N.M. stated that N.M. had been working mail route 88, had parked his mail vehicle near 2626 W. Rhor, and walked to the door to deliver the mail. N.M. stated that as he began to approach the residence of 5273 N. 27th Street from the north, he walked onto the small porch to place mail into the boxes. N.M. stated that he then observed three subjects come from the backyard (from the west of where he was) and surrounded him as he was on the porch. N.M. stated that he was somewhat trapped due to the railings on the porch and the three subjects surrounding him. N.M. stated that he had the ring of apartment keys in one pocket of his outer most jacket and the chain was exposed across his jacket leading to the Arrow key that was in the opposite pocket of his jacket.

7

18.     N.M. described Subject #1 as a black male, approximately 22-27 years old, over 6'0" tall, medium brown complexion, wearing a black ski mask covering his head, face and neck, with his eyes exposed, aviator sunglasses with plastic frames and gray/black lenses, a black hooded sweatshirt, dark jeans, unknown shoes, armed with a black Glock 9mm handgun with an extended magazine. N.M described Subject #2 as a black, male, approximately 22-27 years old, over 6'0" tall, medium brown complexion, wearing a black ski mask covering his head, face and neck with his eyes exposed, "beach style" square sunglasses, a black hooded sweatshirt, dark blue jeans, unknown shoes, armed with a black Glock 9mm handgun with a tan extended magazine and switch attached to the back of the gun. N.M. stated that N.M. knew the term "switch" to be an added part on a gun that makes the firearm fully automatic. N.M. described Suspect #3 as a black, male, approximately 22-27 years old, over 6'0" tall, medium brown complexion, wearing a black ski mask covering his head, face and neck, with his eyes exposed, a black hooded sweatshirt, dark jeans, unknown shoes, armed with a black Glock 9mm handgun with an extended magazine.

19.     N.M. stated that Suspect #1 was armed with a gun which he held at his side when he demanded N.M.'s keys. N.M. stated that he held up his hands while Suspect #1 grabbed the chain that was exposed outside of his jacket and took N.M.'s keys. N.M. stated that Suspect #2 approached him, used his gun to push up the brim of N.M.'s hat, and asked N.M. what else he had. N.M. stated that he told the suspect that he didn't have anything else. N.M. stated that Suspect #3 did not say anything to him or touch him, but was armed with a gun in his waistband and positioned himself with the other two Suspects. N.M. stated that after the suspects obtained N.M.'s keys, all three suspects fled on foot in the same direction they had approached. N.M. stated that he heard car doors opening and a vehicle drive away but he did not look into the alley to obtain a vehicle description nor which direction they fled.

8

20.     A canvas for surveillance video was conducted and Ring video was located at 5248 N. 27th Street as well as surveillance video from 2800 W. Custer Ave.  During the collection of the Ring video, officers were able to observe at 11:41AM, a white 2007-2012, 4 door, Nissan Altima driving southbound through the alley at a high rate of speed. The vehicle had tinted windows (including front window brow only), a sunroof, side window deflectors, six spoke aluminum rims (split spokes), damage to rear passenger bumper/quarter panel, damage to front passenger quarter panel, dual exhaust, and front and rear unknown registration plates. During a review of the surveillance video obtained from 2800 W. Custer, Officers observed the white Nissan Altima approach the alley at 11:38 A.M., from the west and drive southbound in the alley. Multiple suspects can be observed exiting the vehicle and proceed towards where the victim was robbed. The white Nissan continues southbound in the alley following the incident.

21.     On February 13, 2023, at approximately 2:52 PM., a law enforcement member of the Milwaukee Area Violent Crimes Task Force (MAVCTF) observed a vehicle matching the above description driving west on North Avenue from 73rd Street. The vehicle was a 2010 Nissan Altima 4 door (WI plate AJF-7039). The vehicle subsequently pulled into the Brother's Plus Grocery Store located at 4020 W. North Avenue. Task Force Officers (TFOs) observed a thin black male with shoulder length dreads exit the vehicle's front passenger door and enter the business. The subject was wearing a black T-shirt, camouflage pants, and white/black shoes. The subject then exited the store and re-entered the Altima's front passenger door. TFO Strasser obtained a short video of the subject during the course of the surveillance.

22.     The vehicle was then observed driving to and parking in the rear 2225 N. 35th Street. Task Force Officers were able to run the plate and noted that the vehicle listed to ABDI BABA (dob: 01/01/1998), with an address of 2303 W. Cherry Street. This same vehicle was observed via

9

a law enforcement camera system at West Silver Spring Drive and North Green Bay Avenue on February 10, 2023, at 11:08 A.M. The robbery occurred on February 10, 2023, at approximately 11:41 A.M and is 0.9 miles away from the West Silver Spring Drive and North Green Bay Avenue intersection.

23.     Task Force Officers were aware that there were several armed robberies of United States Postal carriers of their Arrow keys in recent months and that a search warrant had been executed on January 27, 2023. Task Force Officers were also aware that following the search warrant, several subjects were taken into custody and released, including HURIA H. ABU. ABU had been interviewed by MAVCTF TFO Brendan Dolan following his arrest while in custody. TFO Dolan was shown the short video clip of the surveillance of the subject that was observed getting in and out of the Nissan Altima. TFO Dolan was able to identify the subject as ABU, based on his prior interactions with him.

24.     On February 14, 2023, a state search warrant was obtained for a GPS tracker in order to identify location information for the 2010 Nissan Altima 4 door (WI plate AJF-7039), identified by law enforcement as the suspect vehicle in the February 10, 2023, armed robbery. On Friday March 3, 2023, a GPS was attached to the vehicle and the GPS began providing location information. Along with officers observing and locating the vehicle at 2303 W. Cherry Street in order to place the GPS onto the vehicle, during the monitoring of the GPS, Task Force Officers have observed the vehicle and monitored the vehicle's GPS location at the Cherry Street address on numerous occasions.

25.     On March 13, 2023, Law Enforcement members of the MAVCTF and Milwaukee Police Officers responded to an armed robbery of a United States Postal carrier near 4548 N. 38th Street, Milwaukee. The victim, identified and hereinafter referenced as M.P., stated that at

10

approximately 1:00 p.m., he parked his truck at 4501 N. 38th Street on the west side of the street, facing south. M.P. stated that while delivering mail at 4514 N. 38th Street, he observed two black male suspects on the west side of the street walking southbound. M.P. stated that the two seemed suspicious because they had masks on. M.P. stated that the two suspects walked past his truck, then walked in front of his truck eastbound. The suspects then went north on the east side of N. 38th Street. M.P. stated that he later observed them duck by the houses near 4518 N. 38th Street while he was further north delivering mail.

26.     M.P. stated that when he got near 4548 N. 38th Street, he observed the two suspects running at him. M.P. described Suspect #1 as a black, male, approximately 16 years old, approximately 5'4" tall, short, thin build, wearing a dark royal blue coat, black running pants, armed with a Draco styled gun with a wooden stock. M.P. described Suspect #2 as a black, male, approximately 6'0" tall, light complected, wearing a black jacket and black jogging pants. M.P. stated that one of them stated "don't run now bitch." M.P. stated that Suspect #1 pointed the gun at his head and said, "Give me the keys. Give me the keys. I'll shoot you." M.P. stated that they tried grabbing his keys from the right side of him, but they were on a lanyard. M.P. stated that he told them that the keys were on a lanyard, so they unclipped them and ran northbound from the location and continued eastbound on W. Glendale.

27.     A witness to the incident, hereinafter P.M., stated that she heard talking outside and looked out her front window and observed the postal carrier running. She stated that she got up to the storm door and observed two suspects, one of which had a gun pointed at the postal carrier and was wearing a blue coat.  P.M. stated that she heard the postal carrier say "ok..ok" but did not hear what the suspects were saying. P.M. stated that she then grabbed her three-year-old nephew and

11

pulled him to the ground for fear that shots would be fired. P.M. stated that she waited for the suspects to leave and called the police.

28.     Video surveillance was obtained from the Hopkins Food Mart located at 4601 N. Hopkins Street, Milwaukee. The cameras were located on the south side of the business and the east side of the business. MACTF investigators observed a 2009 silver Honda Civic with front and rear plates, no sunroof, damage to front driver's quarter panel, 7 spoke hubcaps, broken front driver hubcap, with the front passenger inner headlight on (others defective), circling the block and fleeing the area of the robbery, just after it took place.

29.     An attempt to identify the vehicle was conducted by querying FLOCK and ALPR cameras in the area with a similar suspect vehicle description. A hit on a 2009 Honda Civic 4 door, WI plate ABG-8200, was obtained at several times on March 13, 2023 at the following locations:

a.      16:26 – 21 SWE W. Fond Du Lac at Capital Ave.

b.      13:36 – #01 N/B Port Washington @ Hampton Ave

c.      12:19 – #10 MLK & W North – S/B

d.      11:42 – 25 S/B N. Sherman at W Hampton

e.      8:33 – 07 S/B N. 35th Street at W. Wisconsin

30.     The vehicle listed to a Mohammed F. Omar (dob: XX/XX/1990) of 1809 W. McKinley Avenue, Milwaukee.

31.     A Milwaukee Police database query was then done for the Wisconsin plate ABG-8200. A call for service regarding a subject with a gun and shots fired was received on January 2, 2023 near North Buffum Street and East Wright Street. A second caller then called and reported that her house had been struck by gunfire at 2513 N. Buffum Street. Officers responded and ran all vehicles in the area including a silver 2009 Honda Civic, WI plate ABG-8200, which was

12

parked in front of 2519 N. Buffum Street (next door to 2513 N. Buffum, and also struck by the gunfire) when officers arrived. A body camera review of the responding officer was reviewed by investigators and the 2009 silver Honda was also observed driving by the officer at 10:42 a.m. on January 2, 2023.

32.     On March 14, 2023, an offline search of the 2009 Honda Civic, WI plate ABG-8200, was done and on December 19, 2022, the vehicle was run by Whitefish Bay Police Department. Your affiant contacted Whitefish Bay Police Department on March 14, 2023 and confirmed with Whitefish Bay Detective Joe McLeod that the vehicle was traffic stopped on December 19, 2022 at 9:48 p.m., at the intersection of Santa Monica and W. Silver Spring Drive in Whitefish Bay, for speeding, driving without a license, and failure to stop at a stop sign. The driver of the vehicle was identified as HURIA H. ABU, dob: XX/XX/2002. ABU provided Whitefish Bay with a home address of 2519 N. Buffum Street. During a review of the body cam of Whitefish Bay officers during the traffic stop, ABU can be observed speaking with officers in the driver's seat of the vehicle. During the interaction, ABU was observed holding a cellular telephone with a red case. ABU provided officers with the cellular telephone in order to provide a photo of his identification card. Again, the cellular telephone can be seen being handed to the Whitefish Bay officer by ABU in a red case. The cellular telephone is then handed back to ABU by the officer. ABU also provided officers with his home address of 2519 N. Buffum Street in Milwaukee.

33.     Following the arrest of COOK, ABU, SMITH, TURNER, and HAJI, on January 25, 2023, only COOK and HAJI were held in state custody. All others were released and on February 10, 2023, the next robbery of a United States Postal carrier for his Arrow key occurred. The suspect vehicle in that robbery was the 2010 Nissan Altima 4 door (WI plate AJF-7039)

13

registered to BABA who is associated to ABU. ABU was observed on February 13, 2023, exiting the Altima during a law enforcement surveillance. The suspect vehicle of the United States Postal carrier robbery on March 13, 2023 was identified as a 2009 Honda Civic 4 door (WI plate ABG-8200). ABU was stopped by Whitefish Bay Police Department on December 19, 2022, driving this suspect vehicle.

34.    On March 24, 2023, surveillance was conducted by the FBI Surveillance Operations Group of the 2009 silver Honda Civic. FBI SOG members observed the driver of the vehicle, later identified as ABDI A. ABDI, dob: XX/XX/2001, exit the Honda Civic at the Fast and Friendly Grocery Store located at 311 W. Locust Street, Milwaukee. FBI SOG members observed ADBI exit the location and return to his vehicle. While walking to his vehicle, FBI SOG members took photographs of ABDI exiting the location and were able to observe what appeared to be registration plates and a registration sticker in his left hand.

35.    Later that same day, a traffic stop of the silver 2009 Honda Civic was conducted by the Milwaukee Police Department for expired registration tags affixed to the vehicle. The driver of the vehicle was identified as ABDI, indicated to officers, that the vehicle was registered in his name and had just obtained new plates and registration for the vehicle. ABDI indicated that the new plates for the vehicle were WI plate ASV-4406. Officers observed two other occupants inside the vehicle and identified the individuals as ABU and DARRION M. ALLISON, dob: XX/XX/2000. While officers were obtaining contact information for the individuals inside the vehicle, ABU indicated that his telephone number was 262-264-0206, ABDI indicated that his telephone number was 262-283-2100, and ALLISON indicated that his telephone number was 414-588-5392. Officers then released the vehicle without incident.

14

36.     On March 27, 2023 at 12:20 am, Butler Police Department (BPD) Officer Knapp observed a suspicious vehicle, later identified as a silver 2009 Honda Civic, parked on the west side of N. 125th Street facing south with a defective head lamp and dark tinted windows. Officer Knapp ran the registration of the vehicle, WI plate ASV-4406, and the registered owner came back to ABDI, with a listed address of 5230 N. Sherman Blvd #23 in Milwaukee. A DOT check of ABDI revealed that ABDI had a suspended license for a failure to pay a forfeiture.

37.     Officer Knapp turned his marked squad around and the vehicle pulled away from its parked position southbound N. 125th Street towards W. Hampton Avenue. As he was attempting to catch up to the vehicle to conduct a traffic stop for an equipment violation, Officer Knapp observed a male subject, later identified as ABDI, running from west side of N. 125th Street across N. 125th Street, eastbound in the alley behind Butler Auto Care, 12432 W. Hampton Avenue and south of 4820 N. 125th Street.  While checking the area, Officer Knapp located ABDI and the other male subject, identified verbally as DARRION M. ALLISON, dob: XX/XX/2000, walking northbound on the west side of the street through the snow along N. 124th Street in front of 4935 N. 124th Street.

38.     After losing sight of both subjects, Officer Knapp regained eyes on the subjects and made contact with the individuals, who verbally identified themselves as ABDI and ALLISON. ALLISON told Officer Knapp that they were trying to get to the store. Officer Knapp then spoke to ABDI and asked why someone was driving his vehicle. ABDI told Officer Knapp that everyone was "good" and indicated that his cousin was driving his vehicle with his permission. Upon obtaining ABDI and ALLISON's identifying information, ABDI stated that his telephone number was 262-283-2100 and ALLISON indicated that his telephone number was 414-588-5392. Officer Knapp then indicated to ALLISON and ABDI that they were free to leave.

15

39.     After ABDI and ALLISON were released, Officer Knapp, again checked the area and observed the suspicious 2009 Honda Civic return.  Officer Knapp activated his emergency lights and conducted a traffic stop on N. 125th Street, just south of W. Stark Street. Officer Knapp made contact with the driver, identified as HURIA H. ABU, dob: XX/XX/2002, and informed him of the reason for the traffic stop. Officer Knapp smelled a strong odor of marijuana inside the vehicle. ABU stated that he was in the area to obtain gas and that he was just "chilling" there and that "I always park right here." Prior to walking back to his squad vehicle, ABU told Officer Knapp that Officer Knapp could check the vehicle out. Officer Knapp then searched the vehicle via consent from ABU. Officer Knapp located a box of blue latex gloves, 21.9 grams of a green leafy substance that later field tested positive for THC, a black and multicolor backpack containing a black Nike ski mask and (17) personal checks made out to various individuals issued from various individuals, most of whom resided in the City of Milwaukee. Officer Knapp also located (55) unused "cannabis flower" Ziplock bags, a box of 9mm Federal ammunition containing (20) unused round, a black and red digital scale, and (2) additional checks in the glovebox along with (2) money orders totally $150 USC.

40.     Officer Knapp also located (4) Apple iPhones inside the vehicle. One of the Apple iPhones had a red/black case with ALLISON's driver's license in the case pocket on the back side of the phone. The second iPhone (blue back with no scratches or cracks) was in the same spot that ALLISON's iPhone was located. This phone appeared to be brand new and not set up. The third phone was an iPhone that had a silver back with no case. This was the cellular phone on ABU's person when he exited the vehicle and placed it on the trunk of the vehicle. When the home screen turned on, there was picture of ABU wearing a white T-shirt with black pants holding money. The fourth iPhone located, had a blue cracked back and pieces missing along with the lower front

16

screen that was cracked. This phone was on the front passenger seat. There were no identifying serial numbers or model numbers observed on the outside of this phone. This phone was not in a case.

41.     Following the search of the vehicle. ABU was taken into custody and cited for possession of marijuana as well as possession of drug paraphernalia. ABU was transported to the Waukesha County Jail for booking and then released.

42.     Later that day, on March 27, 2023, Officer Knapp went back to the area of the location where ABDI and ALLISON had been questioned and observed (2) blue latex gloves on the east side of 4935 N. 124th Street. One of the blue latex gloves was located on the south side of the driveway entrance and the second glove was located on the north side of the driveway entrance.

43.     On March 28, 2023, after speaking with your affiant about the circumstances regarding the investigation on ABU as well as others, BPD Captain Brian Zalewski obtained video surveillance from the Village of Butler Town Hall. Captain Zalewski reviewed Village of Butler Town Hall security cameras during the timeframe of Officer Knapp's contact with ABU, ALLISON and ABDI. At 12:18:30 AM, the camera activated (as it is motion censored) as two subjects were observed next to, on the north side of, the blue mailbox in front of the Post Office. One subject was squatting down and appeared to be tampering with the bottom half of the mailbox. The second subject, who was the taller of the two, was standing behind the first subject. It should be noted that the blue mailbox had the lock and key access on the lower half of the side of the box facing north. At 12:18:32 AM, the subject squatting down stands up and both subjects began to walk towards N. 125th Street. The camera stopped recording at 12:18:45 AM.

44.     Following a review of video surveillance, Captain Zalewski contacted the post master of the Butler Post Office, Karen Monreal, located at 12420 W. Hampton, one block from

17

where the 2009 Honda Civic was parked the previous morning when ABU was arrested. Captain Zalewski stated that Monreal stated that the top of the bin in the front mailbox contained numerous small packages, election ballots, and a small amount of mail located underneath the packages, however, based on her many years of experience working at this post office, the bin in the mailbox would normally be overflowing after the weekend. On that day, she considered the amount of mail lighter than the normal load.

45. On March 28, 2023, prior to returning the aforementioned cellular phones that were recovered from the Honda Civic to their owners, Captain Zalewski called the telephone numbers provided by ALLISON and ABDI and the associated cellular telephone did ring and confirm that the cellular number provided by ALLISON and ABDI, were indeed, the telephone numbers assigned to those cellular telephones.

46. Based on the facts in this case and the association of ABDI and ALLISON with ABU and the suspect vehicle in the armed robbery of the mail carrier on March 13, 2023, your affiant believes that there is probable cause that ABDI and ALLISON are the users of the Target Cellular Devices and are associated with the violations being investigated. Your affiant also believes that the devices are still active and, therefore, historical and prospective information requested will assist in obtaining additional evidence regarding locations (where one sleeps or visits before/after criminal activity) and evidence of the actual user of the device based on historical pattern of life and their current location.

**AUTHORIZATION REQUEST & MANNER OF EXECUTION**

47. I request that the Court issue the proposed search warrant pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c) and 2711.

18

48.     Because collecting the information authorized by this warrant may fall within the statutory definitions of a "pen register" or a "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), this application and the accompanying warrant are intended to comply with requirements set forth in 18 U.S.C. §§ 3122-3123.

49.     In my training and experience, I have learned that cellular phones and other cellular devices communicate wirelessly across a network of cellular infrastructure, including towers that route and connect individual communications. When sending or receiving a communication, a cellular device broadcasts certain signals to the cellular tower that is routing its communication. These signals include a cellular device's unique identifiers.

50.     In my training and experience, I have learned that T-Mobile is a company with its headquarters located within the United States and provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of cellular devices to which they provide service. That information includes (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, (2) cell-site data, also known as "tower/face information" or cell tower/sector records, and (3) timing advance or engineering data commonly referred to as per call measurement data (RTT, True Call, LDBoR, or equivalent). E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural

19

areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.

51.     To facilitate execution of this warrant, law enforcement may use an investigative device or devices (sometimes referred to as a Cell Site Simulator or Wi-Fi geolocation device) capable of broadcasting signals that will be received by the Target Cellular Devices or receiving signals from nearby cellular devices, including the Target Cellular Devices. Such a device may function in some respects like a cellular tower, except that it will not be connected to the cellular network and cannot be used by a cell phone to communicate with others. The device may send a signal to the Target Cellular Devices and thereby prompt it to send signals that include the unique identifier of the device. Law enforcement may monitor the signals broadcast by the Target Cellular Devices and use that information to determine the Target Cellular Device's location, even if it is located inside a house, apartment, or other building.

52.     The investigative device may interrupt cellular service of phones or other cellular devices within its immediate vicinity. Any service disruption to non-target devices will be brief and temporary, and all operations will attempt to limit the interference with such devices. In order to connect with the Target Cellular Devices, the device may briefly exchange signals with all phones or other cellular devices in its vicinity. These signals may include cell phone identifiers. The device will not complete a connection with cellular devices determined not to be the Target Cellular Devices, and law enforcement will limit collection of information from devices other than the Target Cellular Devices. To the extent that any information from a cellular device other than the Target Cellular Devices are collected by the law enforcement device, law enforcement will delete that information, and law enforcement will make no investigative use of it absent further

20

order of the court, other than distinguishing the Target Cellular Devices from all other cellular devices.

53. I request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the target cellular device would seriously jeopardize the ongoing investigation. Such disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). There is a reasonable necessity for the use of the techniques described. *See* 18 U.S.C. § 3103a(b)(2). As further specified in the attachment, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is a reasonable necessity for that seizure. *See* 18 U.S.C. § 3103a(b)(2).

54. I further request the following information from the service provider: the installation and use of a pen register trap and trace device, all real-time precision location information, including E-911 Phase II data, GPS data, and latitude-longitude data, real time cell site information, and per call measurement or timing advance data (RTT, True Call, LDBoR, or equivalent) beginning 30 days from the date the warrant is issued.

21

55.     I further request call detail records and data reports (voice, SMS, MMS), including cell site location information, originating and destination IP addresses, per call measurement or timing advance data (RTT, True Call, LDBoR, or equivalent) from February 1, 2023 to present.

56.     I further request subscriber and extended subscriber information, handset identifiers, handset make and model, Wi-Fi MAC address, and account notes and memos for the target device.

57.     I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the target cellular device outside of daytime hours.

58.     I further request that the pen register / trap and trace device be transferable to any changed dialed number subsequently assigned to a device bearing the same ESN, IMSI, or SIM as the Target Cellular Devices; any changed ESN, IMSI, or SIM subsequently assigned the same dialed number as the Target Cellular Devices; or any additional changed dialed number, ESN, IMSI, or SIM listed to the same subscriber account as the Target Cellular Devices.

59.     I further request that the Court order all documents in support of this application, including the affidavit and search warrant, be sealed until further order by the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize the investigation. I further request that the Court order any service provider, or their representatives, not to disclose the existence of this warrant or investigation unless ordered to do so by the Court.

60.    A search warrant may not be legally necessary to authorize all of the investigative techniques described. Nevertheless, I submit this warrant application out of an abundance of caution.

**ATTACHMENT A-1**

This warrant authorizes the use of the electronic investigative technique described in Attachment B to identify the location of the cellular device assigned phone number 414-588-5392, whose wireless provider is US Cellular.

This Warrant also serves as a Pen Register order under 18 U.S.C. § 3123. The Court makes the following findings: DARRION M. ALLISON is the person to whom the pen register or trap and trace device is to be attached/applied and who is the subject of the criminal investigation; 414-588-5392 is the phone number to which the device is to be attached; and Title 18 U.S.C. § 1951(a), Hobbs Act Robbery, § 924(c), Brandishing of a Firearm during a Crime of Violence, and § 371 (conspiracy) are the offenses, to which information relates; and

The attorney for the government has certified to this Court that the information likely to be obtained by the installation and use of the pen register or trap and trace device is relevant to an ongoing criminal investigation by the Federal Bureau of Investigation.

Case 2:23-mj-00872-NJ   Filed 04/06/23   Page 30 of 35   Document 1

## ATTACHMENT A-2

This warrant authorizes the use of the electronic investigative technique described in Attachment B to identify the location of the cellular device assigned phone number 262-283-2100, whose wireless provider is Verizon Wireless.

This Warrant also serves as a Pen Register order under 18 U.S.C. § 3123. The Court makes the following findings: ABDI A. ABDI is the person to whom the pen register or trap and trace device is to be attached/applied and who is the subject of the criminal investigation; 262-283-2100 is the phone number to which the device is to be attached; and Title 18 U.S.C. § 1951(a), Hobbs Act Robbery, § 924(c), Brandishing of a Firearm during a Crime of Violence, and § 371 (conspiracy) are the offenses, to which information relates; and

The attorney for the government has certified to this Court that the information likely to be obtained by the installation and use of the pen register or trap and trace device is relevant to an ongoing criminal investigation by the Federal Bureau of Investigation.

**ATTACHMENT B**

**Particular Things to Be Seized**
**with a Cell Site Simulator or Wi-Fi Geolocation Device**

This Warrant authorizes the officers to whom it is directed to determine the location of the target cellular device by collecting and examining:

1. radio signals emitted by the target cellular device for the purpose of communicating with cellular infrastructure, including towers that route and connect individual communications; and

2. radio signals emitted by the target cellular device in response to signals sent to it by the officers;

for a period of thirty (30) days, during all times of day and night. This includes monitoring non-content signaling and routing information, including all non-content packet switched data, through the installation and use of a pen register and trap and trace device pursuant to 18 U.S.C. § 3123 by the Federal Bureau of Investigation. Because the use of the device, a Cell Site Simulator or Wi-Fi geolocation device, may fall within the definitions of a "pen register" or a "trap and trace device," see 18 U.S.C. § 3127(3) & (4), the application and the warrant are designed to comply with the Pen Register Statute as well as Rule 41. The application therefore includes all information required for and serves as a pen register application, 18 U.S.C. § 3123(a); similarly, the warrant therefore includes all the information required for and serves as a pen register order, 18 U.S.C. § 3123(b).

This warrant does not authorize the interception of any content (telephone, text message, or internet based). The investigative device may interrupt cellular service of phones or other cellular devices within its immediate vicinity. Any service disruption to non-target devices will be brief and temporary, and all operations will attempt to limit the interference with such devices.

1

In order to connect with the Target Cellular Devices, the device may briefly exchange signals with all phones or other cellular devices in its vicinity. These signals may include cell phone identifiers. The device will not complete a connection with cellular devices determined not to be any of the Target Cellular Devices, and law enforcement will limit collection of information from devices other than the Target Cellular Devices. To the extent that any information from a cellular device other than the Target Cellular Devices is collected by the law enforcement device, law enforcement will delete that information, and law enforcement will make no investigative use of it absent further order of the court, other than distinguishing the Target Cellular Devices from all other cellular devices.

Under this warrant, the cell site simulator / geolocation device shall be transferable to any changed dialed number subsequently assigned to a device bearing the same ESN, IMSI, or SIM as the Target Cellular Devices; any changed ESN, IMSI, or SIM subsequently assigned the same dialed number as the Target Cellular Devices; or any additional changed dialed number, ESN, IMSI, or SIM listed to the same subscriber account as the Target Cellular Devices.

The Court finds reasonable necessity for use of the techniques and collection of information described. *See* 18 U.S.C. § 3103a(b)(2).

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the information described. *See* 18 U.S.C. § 3103a(b)(2).

## **ATTACHMENT B**

### **Particular Things to Be Seized**

### **from Device Service Provider**

1.      Information about the target cell phone and its location, later referred to collectively as location information, includes all precision location information, E-911 Phase II data, GPS data, latitude-longitude data, per call measurement or timing advance data (RTT, True Call, LDBoR, or equivalent), and real time cell site information for 30 days beginning from the date the warrant was issued.  This includes initiating a signal to determine the location of the target cell phone on the service provider's network or with such other reference points as may be reasonably available and at such intervals and times directed by the government. The information includes monitoring non-content signaling and routing information, including all non-content packet switched data, through the furnishing of information, facilities, technical assistance, and the installation and use of a pen register and trap and trace device pursuant to 18 U.S.C. §§ 3123-3124 by the service provider and the Federal Bureau of Investigation. Because the request for such location data may include use of a "pen register" or a "trap and trace device," see 18 U.S.C. § 3127(3) & (4), the application and the warrant are designed to comply with the Pen Register Statute as well as Rule 41.  The application therefore includes all information required for and serves as a pen register application, 18 U.S.C. § 3123(a); similarly, the warrant therefore includes all the information required for and serves as a pen register order, 18 U.S.C. § 3123(b).

2.      All subscriber and extended subscriber information, handset identifiers, handset make and model, WI-FI MAC address, and account notes and memos pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. §2703(c).

3.      Call detail records and data reports with cell site location information for voice, SMS, MMS, and data connections, originating and destination IP addresses, and per call measurement or timing advance data (RTT, True Call, LDBoR, or equivalent) from October 1, 2022 to present pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. §2703(c).

4.      To the extent that the information described is within the possession, custody, or control of the service provider, the service provider is required to disclose all location information to the government and provide all technical assistance necessary to accomplish the collection of the location information unobtrusively and with as little interference as possible.

5.      This pen register / trap and trace device shall be transferable to any changed dialed number subsequently assigned to a device bearing the same ESN, IMSI, or SIM as the Target Cellular Device; any changed ESN, IMSI, or SIM subsequently assigned the same dialed number as the Target Cellular Device; or any additional changed dialed number, ESN, IMSI, or SIM listed to the same subscriber account as the Target Cellular Devices.

6.      The government shall compensate the service provider for reasonable expenses incurred in furnishing such facilities or assistance. Any service provider or representative who gains access to the information in this warrant shall not disclose the existence of the warrant, order, or investigation to any third party unless ordered to do so by the Court. Additionally, the agency requests that all court orders and supporting documents, including the affidavit and search warrant, be sealed until further order by the Court.

7.      This warrant does not authorize the seizure of any tangible property.  In approving this warrant, the Court finds reasonable necessity for the seizure of the information described.  *See* 18 U.S.C. § 3103a(b)(2).